OPINION
{¶ 1} Defendant-Appellant Finley Foust, Jr. ("Foust") appeals the March 5, 2007 Judgment Entry of the Court of Common Pleas of Crawford County, Ohio sentencing him to five years for Reckless Homicide in violation of R.C. 2903.041, a felony of the third degree consecutive to a one year firearm specification in violation of R.C. 2941.141; and six months for Falsification in violation of R.C. 2921.13(A)(3), a first degree misdemeanor. These charges stem from a shooting on January 23, 2006, during which Foust shot Lindsay Sligar. Lindsay subsequently died from the bullet wound to the chest.
 {¶ 2} On January 24, 2006 a complaint was filed in the Crawford Count Court of Common Pleas, Juvenile Division, against Foust. The complaint alleged Foust was a delinquent child based on a charge of Reckless Homicide, in violation of R.C. 2903.041, a felony of the third degree if committed by adult. On April 3, 2006 on a motion by the State, the Juvenile Court of Crawford County bound Foust over for prosecution as an adult in the Court of Common Pleas.
 {¶ 3} On May 8, 2006 Foust was indicted by the Crawford County Grand Jury on one count of Reckless Homicide in violation of R.C. 2903.041
which contained a three year firearm specification, and one count of Falsification in violation of R.C. 2921.13(A)(3). Foust was arraigned in the Court of Common Pleas on May 15, 2006 and entered pleas of not guilty to both charges. *Page 3 
 {¶ 4} On November 7, 2006 Foust changed his plea to guilty on both charges, and also pled guilty to an amended one year gun specification pursuant to R.C. 2941.141. He was sentenced on March 5, 2007 to five years for Reckless Homicide in violation of R.C. 2903.041, a felony of the third degree consecutive to the one year firearm specification in violation of R.C. 2941.141; and six months for Falsification in violation of R.C. 2921.13(A)(3), a first degree misdemeanor, to be served concurrently to the six year sentence for Reckless Murder with the one year firearm specification.
 {¶ 5} Foust now appeals asserting four assignment of error.
 FIRST ASSIGNMENT OF ERROR DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HIS PLEA OF GUILTY WAS NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY ENTERED
 SECOND ASSIGNMENT OF ERROR DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS CONVICTED OF OFFENSES OVER WHICH THE COMMON PLEAS COURT LACKED JURISDICTION
 THIRD ASSIGNMENT OF ERROR DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS SENTENCED TO A MAXIMUM SENTENCE
 FOURTH ASSIGNMENT OF ERROR DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS SENTENCED BASED ON JUDICIAL FACTFINDING IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS
 {¶ 6} In his first assignment of error, Foust contends that his guilty pleas were not knowingly, intelligently, and voluntarily entered. *Page 4 
 {¶ 7} Before accepting a guilty plea, Ohio Crim. R. 11 requires the trial court to personally address a defendant to determine if the plea is voluntary, and that the defendant understands both the plea itself as well as the rights waived by pleading guilty. Crim. R. 11(C)(2). Specifically, Crim. R. 11(C)(2)(c) provides that the duty of the court extends to:
 Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.
 {¶ 8} "Although using the exact language of Crim. R. 11 is not required, the court must advise the defendant that a plea of guilty waives each of these rights." State v. Graham, 3rd Dist. No. 14-04-28, 2005-Ohio-1431 citing State v. Ballard (1981),66 Ohio St.2d 473, 423 N.E.2d 115. In reviewing the sufficiency of a Crim. R. 11 colloquy, the Court will apply different standards depending on whether the violation stemmed from a failure to inform a defendant of the constitutional rights delineated in Crim. R. 11(C)(2)(c) or whether the failure was to comply with the other requirements of Crim. R. 11(C).Id.
 {¶ 9} With regard to the constitutional rights enumerated in Crim. R. 11, "a guilty plea is constitutionally infirm when the defendant is not informed in a reasonable manner at the time of entering his guilty plea of his rights to a trial by jury and to confront his *Page 5 
accusers, and his privilege against self-incrimination, and his right of compulsory process for obtaining witnesses in his behalf."Ballard, 66 Ohio St.2d at 478. This rule does not extend to require a court to use the exact language of Crim. R. 11, but the court must advise the defendant of each right waived by the guilty plea.Ballard, 66 Ohio St.2d at 480.
 {¶ 10} With regard to the non-constitutional requirements of Crim. R. 11, this Court looks to whether the trial court substantially complied with the requirements of Crim. R. 11. If the trial court has substantially complied with the requirements of Crim. R. 11, this Court will not reverse unless an appellant can demonstrate prejudice.State v. Stewart (1977), 51 Ohio St.2d 86, 93 364 N.E.2d 1163. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." State v. Nero (1990),56 Ohio St.3d 106, 108, 564 N.E.2d 474 citing State v. Carter (1979),60 Ohio St.2d 34, 396 N.E.2d 757.
 {¶ 11} At the commencement of Foust's change of plea hearing, the trial court first discussed the negotiated plea agreement with counsel and then with Foust.
 The Court: . . . Have you had enough time to talk to your client about
 this negotiated plea?
 Ms. Blazef: Yes, Your Honor, we have.
 The Court: Are you satisfied he understands everything that's involved today and is able to go through this?
 Ms. Blazef: Yes, Your Honor.
 The Court: Yes, okay. More importantly, Mr. Foust, you heard — you heard the Prosecutor state the agreement on the record. *Page 6 
 The Defendant: Yes.
 The Court: Is that your understanding of what the promises to you are?
 The Defendant: Yes.
 The Court: Now, normally they'd be in writing. They're not in writing today, so you haven't had time to go over it with your counsel, so I'll restate it in the way I heard it. In exchange for your plea of guilty to Count I, the reckless homicide, Felony of the Third Degree, the State has agreed to ask me to modify the firearm specification that's included in that indictment count to one that carries a mandatory one-year incarceration served before any sentence on the actual crime instead of one that carries three years mandatory before you serve the sentence on the actual offense.
(Tr.p. 4-6). The trial court proceeded to then engage in a discussion with Foust regarding whether he understood the rights he waived by pleading to the charge, as well as whether he understood the consequences of the charge. Foust does not contend that the trial court failed to advise Foust of any of the constitutional protections he was waiving.
Furthermore, this Court cannot find any evidence in the record that the trial court was anything other than thorough in advising Foust of the rights he was waiving.
 {¶ 12} After engaging in this discussion, the trial court again inquired as to Foust's understanding of the matter.
 The Court: . . . entering a complete admission of your guilt; is that what you want to do?
 The Defendant: Yes.
 The Court: Very well. Have you had enough time to talk to your lawyers?
 The Defendant: Yes.
 The Court: Have they been able to answer your questions?
 The Defendant: Yes.
(Tr.p. 9-10). *Page 7 
 {¶ 13} At the change of plea hearing, Foust indicated to the Court that he had a full understanding of the charges against him. Moreover, the trial court conducted a significant discussion with Foust, in which he repeatedly indicated that he understood the charge he was pleading to and had discussed it with counsel. In sum, nothing in the record or presented by Foust on appeal indicates that his plea was anything other than knowing, intelligent, and voluntary or that the trial court failed to comply with the requirements of Crim. R. 11.
 {¶ 14} Foust can only support his contention that he did not understand the charge he was facing by citing his statements to the victim's family, at sentencing, that the shooting "was an accident." (Tr.p. 5). However, this Court notes that Foust's statement that it was an accident does not indicate a lack of understanding of the charge to which he pled. Reckless Murder is defined by R.C. 2903.041 stating that "No person shall recklessly cause the death of another or the unlawful termination of another's pregnancy." R.C. 2901.22(C) defines the culpable mental state of reckless as follows:
 A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
Reckless murder does not require a mental state of knowingly or purposely or that Foust intended to kill Sligar. Instead, Foust only needed to have acted recklessly. The shooting may not have been intentional, but that does not preclude Foust's actions from fitting the *Page 8 
definition of reckless murder, nor does Foust's characterization demonstrate that he did not understand the charge to which he pled.
 {¶ 15} Accordingly, because we find that Foust's plea to the charge of reckless murder was made knowingly, intelligently, and voluntarily, we overrule Foust's first assignment of error.
 {¶ 16} In his second assignment of error Foust contends that the Common Pleas Court lacked jurisdiction over the gun specification and the falsification charge because those charges were not specifically bound-over from juvenile court. Foust does not appear to challenge the trial court's jurisdiction over the charge of Reckless Homicide in this assignment of error.
 {¶ 17} The Ohio Supreme Court has directly addressed the indictment power of the grand jury after a felony charge against a juvenile has been properly bound over from juvenile court to the Court of Common Pleas, holding that
 1. Once a juvenile is bound over in any county in Ohio pursuant to R.C. 2151.26 and Juv.R. 30, that juvenile is bound over for all felonies committed in other counties of this state, as well as for future felonies he may commit.
 2. When a minor is transferred from the Juvenile Court to the Court of Common Pleas on a charge which would constitute a felony if committed by an adult, the grand jury is empowered to return any indictment under the facts submitted to it and is not confined to returning indictments only on charges originally filed in the Juvenile Court. *Page 9 
State v. Adams (1982), 69 Ohio St.2d 120, 431 N.E.2d 326, at syllabus. Furthermore, this rule has been consistently applied by appellate courts throughout Ohio.
 It is well established in Ohio jurisprudence that upon transfer from juvenile court, a grand jury is authorized to return a proper indictment on the facts submitted to it, and is not confined to the charges originally filed in the juvenile court. State v. Adams (1982), 69 Ohio St.2d 120, paragraph two of the syllabus. To confine an indictment solely to the charges presented from juvenile court would improperly restrict the power of the grand jury to review the facts and indict on the charge or charges it feels is appropriate in any given case.
State v. Duncan (Sept. 12, 2001), 9th Dist. No. 3117-M citing State v. Walker (Sept. 28, 1999), 5th Dist. No. 99 CA 2.
 {¶ 18} Foust was bound over from the juvenile court on the charge of Reckless Murder. He was indicted in the Court of Common Pleas on the charge of Reckless Murder including a three year gun specification and the charge of Falsification. Both of these charges stemmed from the same incidents as the original charge of Reckless Murder. All of these charges were properly within the indictment power of the grand jury to "return any indictment under the facts submitted to it." Adams,supra. For the foregoing reasons, Foust's second assignment of error is overruled.
 {¶ 19} In his third and fourth assignments of error, Foust argues that he was denied due process of law when he was sentenced to a maximum sentence and because his sentence was based on judicial fact finding.
 {¶ 20} In reviewing sentencing decisions of a trial court, an appellate court conducts a meaningful review of the sentence decision.State v. Carter 11th Dist. No. *Page 10 
2003-P-0007, 2004-Ohio-1181. "Meaningful review" means that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law. Carter, at ¶ 44 citing State v. Comer (2003),99 Ohio St.3d 463, 476, 793 N.E.2d 473; R.C. 2953.08.
 {¶ 21} Additionally, a court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing which are to protect the public from future crime by the offender and others and to punish the offender. R.C. 2929.11(A). To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both. Id.
 {¶ 22} Pursuant to R.C. 2929.14(A),
 . . . [i]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender pursuant to this chapter, the court shall impose a definite prison term that shall be one of the following:
 * * *
 (3) For a felony of the third degree, the prison term shall be one, two, three, four, or five years.
 {¶ 23} Accordingly, the trial court was authorized to sentence Foust to a sentence of up to five years, as he was convicted of a felony of the third degree. The trial court sentenced Foust to a prison term that was within the statutory range set forth above. *Page 11 
 {¶ 24} Additionally, for the reasons articulated in State v.McGhee, 3rd Dist. No. 17-06-05, 2006-Ohio-5162, we find no merit in Foust's argument that his sentence violates the Due Process Clauses. We note, as to this case, that the offenses occurred subsequent to the United States Supreme Court's holding in Apprendi v. NewJersey (2000), 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435, which provided notice that a major shift in sentencing was likely to occur and supports this court's conclusion in McGhee that the remedy announced inFoster does not violate due process. State v. Foster, 109 Ohio St.3d 1,845 N.E.2d 470, 2006-Ohio-856.[1] Likewise, the sentencing range for Foust's felony has remained unchanged, so Foust had notice of the potential sentence for his offenses.
 {¶ 25} In Foster, the Supreme Court of Ohio held that portions of Ohio's felony sentencing framework were unconstitutional and void, including R.C. 2929.14(B) requiring judicial findings that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crimes by the offender, and R.C. 2929.14(C) which requires judicial fact-finding for maximum prison terms. See Foster, 2006-Ohio-856 at ¶ 97, 103. Regarding new sentences, the Supreme Court of Ohio stated, "we have concluded that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or *Page 12 
give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Foster at ¶ 100; see also Mathis, 2006-Ohio-855 at paragraph three of the syllabus.
 {¶ 26} In Mathis, decided the same day as Foster, the Supreme Court of Ohio provided, in relevant part, as follows:
 As we have held in Foster, however, trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences . . . the trial court will have discretion to sentencing within the applicable range, following R.C. 2929.19 procedures.
Mathis at ¶ 37; see also State v. Wentling, 3rd Dist. No. 16-06-03, 2007-Ohio-217.
 {¶ 27} However, a trial court must still consider the overall purposes of sentencing as set forth in R.C. 2929.11, as well as the factors relating to the seriousness of the offense and recidivism of the offender under R.C. 2929.12, when sentencing an offender. State v.Smith, 3rd Dist. No. 2-06-37, 2007-Ohio-3129 at ¶ 26 citing Mathis, 2006-Ohio-855 at ¶ 38. But, under R.C. 2929.12, a sentencing court is not required to use specific language regarding its consideration of the seriousness and recidivism factors. Id. citingState v. Sharp 10th Dist. No. 05AP-809, 2006-Ohio-3448;State v. Amett (2000), 88 Ohio St.3d 208, 205; State v. McAdams,162 Ohio App.3d 218; and State v. Patterson 8th Dist. No. 84803, 2005-Ohio-2003. Further, there is no requirement in R.C. 2929.12
that the trial court state on the record that it has considered the statutory criteria or even discussed them. Id. citing State v.Polick (1995), 101 Ohio App.3d 428, 431; State v. Gant, 7th Dist. *Page 13 
No. 04-MA-252, 2006-Ohio-1469 (nothing in R.C. 2929.12 or the decisions of the Ohio Supreme Court imposes any duty on the trial court to set forth its findings); State v. Hughes 6th Dist. No. WD-05-024, 2005-Ohio-6405 (trial court was not required to address each R.C. 2929.12 factor individually and make a finding as to whether it was applicable).
 {¶ 28} In the present case, the trial court conducted Foust's sentencing hearing pursuant to R.C. 2929.19, which provides, in relevant part, as follows:
 (A)(1) The court shall hold a sentencing hearing before imposing a sentence under this chapter upon an offender who was convicted of or pleaded guilty to a felony . . . At the hearing, the offender, the prosecuting attorney, the victim or the victim's representative . . . and, with the approval of the court, any other person may present information relevant to the imposition of sentence in the case. The court shall inform the offender of the . . . finding of the court and ask the offender whether the offender has anything to say as to why sentence should not be imposed upon the offender.
 * * *
 (B)(1) At the sentencing hearing, the court, before imposing sentence, shall consider the record, any information presented at the hearing by any person pursuant to division (A) of this section, and, if one was prepared, the pre-sentence investigation report . . . and any victim impact statement made . . .
 {¶ 29} A review of the record in the present case demonstrates that the trial court followed the procedures set forth in R.C. 2929.19 and considered both R.C. 2929.11 and R.C. 2929.12 in sentencing Foust. Furthermore, we find that Foust's sentence was supported by the record. *Page 14 
 {¶ 30} Specifically, we note that at Foust's sentencing hearing, the trial court stated as follows:
 The Purposes and Principles of Sentencing which I have considered before I impose the sentence here, No. 1 is punish the offender then it goes down from there. It's not revenge to enforce the law.
 Your criminal history reveals starting in `03 habitual disobedient; tampering with property; theft; drug abuse; tampering with property; assault; curfew; curfew; failure to control; no operator's license; receiving stolen property, a felony for which the court downstairs put you on a suspended commitment to the Youth Commission; followed up less than ten days later with an aggravated assault, a Misdemeanor 1.
 Once again the Court did not sentence you to [DYS] but continued your commitment and left you here in the community.
 Then you follow that in November with a curfew violation and once again leniency was shown to you and you were not sent to the Youth Commission and a year later the incident that brought us here today occurred.
 I'm not here to blame the juvenile court. I blame you. You have demonstrated that the leniency shown to you in the past by the court system did no good. Your behavior worsened rather than improved. That tells me that nothing short of a prison term will solve this problem here today and deal with you adequately.
 * * *
 It is my duty at this time to sentence you to five years at Lorain Correctional Institution, to sentence you to one year mandatory to be served prior to the five years for the reckless homicide, and to six months in the Crawford County Jail.
(Tr.p. 32-34).
 {¶ 31} Additionally, we note that the trial court also stated in its July 10, 2007 Judgment Entry that it had "considered the record, oral statements, any victim impact *Page 15 
statement and pre-sentence report prepared as well as the principles and purposes of sentencing under Ohio Revised Code section 2929.11, and has balanced the seriousness and recidivism factors under Ohio Revised Code section 2929.12."
 {¶ 32} Thus, although the trial court was not required to set forth its specific findings, nor was it required to specifically state that it considered each of the subsections of R.C. 2929.11, R.C. 2929.12, or R.C. 2929.13 pursuant to Foster, and Smith, supra, the record clearly evinces that the trial court considered the requisite factors of R.C.2929.12 in imposing Foust's prison term. Therefore, we cannot clearly and convincingly find that the record does not support Foust's sentence or that the sentence is otherwise contrary to law.
 {¶ 33} Based on the foregoing, Foust's third and fourth assignments of error are overruled and the March 5, 2007 Judgment of the Court of Common Pleas of Crawford County, Ohio sentencing him to five years for Reckless Homicide in violation of R.C. 2903.041, consecutive to a one year firearm specification in violation of R.C. 2941.141; and six months for Falsification, in violation of R.C. 2921.13(A)(3), is affirmed.
Judgment Affirmed. ROGERS, P.J., and WILLAMOWKSI, J., concur.
[1] We note that the Ohio State Public Defender attempted to appeal the unanimous Foster decision to the United States Supreme Court. On October 16, 2006 the United States Supreme Court denied the Petition for Writ of Certiorari. Foster v. Ohio (2006), 127 S.Ct. 442,166 L.Ed.2d 314. *Page 1